No. 22-11857

# In the United States Court of Appeals for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CHRISTOPHER JOHN STREETER,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Middle District of Florida, Tampa Division
Case No. 8:20-cr-304, Hon. Virginia M. Hernandez Covington

## *ANDERS* BRIEF OF CHRISTOPHER JOHN STREETER

Thomas A. Burns
BURNS, P.A.
301 West Platt Street, Suite 137
Tampa, FL 33606
(813) 642-6350
tburns@burnslawpa.com

*Court-appointed counsel for
Christopher John Streeter*

*United States* v. *Streeter*, No. 22-11857

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case.

1. Burns, Thomas A. (of Burns, P.A. in Tampa, Florida) – Appellate counsel for Defendant-Appellant;

2. Covington, Hon. Virginia M. Hernandez – United States District Judge;

3. D.B. – Victim;

4. E.P. – Victim;

5. Fitzgerald, Timothy James (of Farmer & Fitzgerald, P.A. in Tampa, Florida) – Trial counsel for Defendant-Appellant;

6. Handberg, Roger B. – United States Attorney;

7. Hoppmann, Karin – Former Acting United States Attorney;

8. Lomax, Christopher (formerly of Jones Day in Miami, Florida) – Attorney for D.B. and E.P.;

9. Lopez, Maria Chapa – Former United States Attorney;

10. McNamara, Linda Julin – Assistant United States Attorney, Deputy Chief, Appellate Division;

11. Murray, Francis D. – Assistant United States Attorney;

12. Rankin, Mark P. (of The Law Office of Mark P. Rankin in Tampa, Florida) – Former trial counsel for Defendant-Appellant;

13. Rhodes, David P. – Assistant United States Attorney, Chief, Appellate Division;

*United States* v. *Streeter*, No. 22-11857

14.    Streeter, Christopher John – Defendant-Appellant;

15.    Thelwell, Lisa Marie – Assistant United States Attorney, Appellate Division; and

16.    Tuite, Hon. Christopher P. – United States Magistrate Judge.

No publicly traded company or corporation has an interest in the outcome of this appeal.

December 12, 2022                    /s/ Thomas Burns
                                     Thomas A. Burns

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellant Christopher John Streeter does not request oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................... C-1

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF CITATIONS ........................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPEL-
LATE JURISDICTION ............................................................ ix

STATEMENT OF THE ISSUES ................................................... 1

STATEMENT OF THE CASE ...................................................... 2

*Course of proceedings* ............................................................ 2

*Statement of facts* ................................................................ 2

    A.    Guilty plea............................................................ 2

    B.    Sentencing ........................................................... 6

*Standard of review* .............................................................. 15

SUMMARY OF THE ARGUMENT............................................... 16

ARGUMENT AND CITATIONS OF AUTHORITY .............................. 16

I.    The Court should independently review the record
to determine whether Streeter knowingly and vol-
untarily pleaded guilty ................................................... 16

    A.    Did the district court follow the procedure set
forth in Federal Rule of Criminal Procedure
11(b)? ................................................................ 18

B.     Did Streeter understand the nature of the charges, including the factual basis and consequences of his guilty plea? ................................ 24

C.     Was Streeter's trial counsel ineffective? ............................. 24

II.    The Court should independently review the record to determine whether Streeter's sentence is subject to reversible error ................................................ 27

A.     Does the written plea agreement's sentence appeal waiver provision preclude any challenge to Streeter's sentence on appeal? ............................. 27

B.     Does Streeter's sentence violate the Eighth Amendment? ................................................. 31

C.     Does Streeter's sentence exceed the applicable statutory penalties? ........................................ 33

D.     Does Streeter's sentence exceed the applicable guideline range? ................................................ 33

E.     Is Streeter's sentence substantively reasonable? ................................................................... 38

F.     Was Streeter's presence required at the bifurcated restitution hearing? ............................... 41

CONCLUSION ................................................................ 41

CERTIFICATE OF COMPLIANCE ..................................... 43

CERTIFICATE OF SERVICE ............................................. 44

iii

# TABLE OF CITATIONS

**Cases**                                                                                    **Page(s)**

*\*Anders* v. *California*,
    386 U.S. 738 (1967)..................................................................*passim*

*Bonner* v. *City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) ........................................... 26

*Boykin* v. *Alabama*,
    395 U.S. 238 (1969).................................................... 17, 18

*Gall* v. *United States*,
    552 U.S. 38 (2007)........................................................ 15

*Harmelin* v. *Michigan*,
    501 U.S. 957 (1991).................................................... 31, 32

*Lafler* v. *Cooper*,
    566 U.S. 156 (2012)...................................................... 24

*Lockyer* v. *Andrade*,
    538 U.S. 63 (2003)........................................................ 32

*Massaro* v. *United States*,
    538 U.S. 500 (2003)...................................................... 25

*McCarthy* v. *United States*,
    394 U.S. 459 (1969)...................................................... 18

*Moore* v. *United States*,
    359 F.2d 852 (5th Cir. 1966) ............................................ 26

*\*Penson* v. *Ohio*,
    488 U.S. 75 (1988)..................................................*passim*

*Rita* v. *United States*,
    551 U.S. 338 (2007)...................................................... 38

iv

*Solem* v. *Helm*,
    463 U.S. 277 (1983)...............................................................32

*United States* v. *Beckles*,
    565 F.3d 832 (11th Cir. 2009) ..........................................20

*United States* v. *Booker*,
    543 U.S. 220 (2005)...............................................................39

*United States* v. *Clay*,
    483 F.3d 739 (11th Cir. 2007) ..........................................39

*United States* v. *Crisp*,
    454 F.3d 1285 (11th Cir. 2006) ........................................40

*United States* v. *De La Cruz Suarez*,
    601 F.3d 1202 (11th Cir. 2010) ........................................15

*United States* v. *Dominguez Benitez*,
    542 U.S. 74 (2004).......................................................22, 23

*United States* v. *Farley*,
    607 F.3d 1294 (11th Cir. 2010) ........................................33

*United States* v. *Frye*,
    402 F.3d 1123 (11th Cir. 2005) ........................................15

*United States* v. *Futch*,
    518 F.3d 887 (11th Cir. 2008) ..........................................26

*United States* v. *Garza-Mendez*,
    735 F.3d 1284 (11th Cir. 2013) ........................................39

*United States* v. *Hernandez-Fraire*,
    208 F.3d 945 (11th Cir. 2000) ..........................................15

*United States* v. *Irey*,
    612 F.3d 1160 (11th Cir. 2010) (*en banc*) .........................39

*United States* v. *Johnson,*
  451 F.3d 1239 (11th Cir. 2006) .......................................................... 32

*United States* v. *Johnson,*
  541 F.3d 1064 (11th Cir. 2008) .................................................... 15, 28

*United States* v. *Killen,*
  729 Fed. App'x 703 (11th Cir. 2018) .................................................. 40

*United States* v. *Kuhlman,*
  711 F.3d 1321 (11th Cir. 2013) .......................................................... 39

*United States* v. *Lecuyer,*
  545 Fed. App'x 874 (11th Cir. 2013) .................................................. 32

*United States* v. *Livesay,*
  587 F.3d 1274 (11th Cir. 2009) .......................................................... 39

*United States* v. *Martin,*
  455 F.3d 1227 (11th Cir. 2006) .......................................................... 40

*United States* v. *McQueen,*
  727 F.3d 1144 (11th Cir. 2013) .......................................................... 39

*United States* v. *Monroe,*
  353 F.3d 1346 (11th Cir. 2003) ...................................................*passim*

*United States* v. *Moriarty,*
  429 F.3d 1012 (11th Cir. 2005) .......................................................... 18

*United States* v. *Phillips,*
  225 F.3d 1198 (11th Cir. 2000) .......................................................... 26

*United States* v. *Plate,*
  839 F.3d 950 (11th Cir. 2016) ............................................................ 40

*United States* v. *Prince,*
  456 F.2d 1070 (5th Cir. 1972) ............................................................ 25

vi

*United States* v. *Puentes-Hurtado,*
    794 F.3d 1278 (11th Cir. 2015) ........................................ 25

*United States* v. *Pugh,*
    515 F.3d 1179 (11th Cir. 2008) ........................................ 40

*United States* v. *Raad,*
    406 F.3d 1322 (11th Cir. 2005) ........................................ 20

\*United States* v. *Robl,*
    8 F.4th 515 (7th Cir. 2021) .............................................. 41

\*United States* v. *Stivers,*
    996 F.3d 800 (7th Cir. 2021) ............................................ 41

*United States* v. *Talley,*
    431 F.3d 784 (11th Cir. 2005) .......................................... 38

*United States* v. *Vonn,*
    535 U.S. 55 (2002) .................................................... 17, 20

\*United States* v. *Wyatt,*
    9 F.4th 440 (7th Cir. 2021) .............................................. 41

*Vick* v. *United States,*
    730 F.2d 707 (11th Cir. 1984) .......................................... 25

**<u>Statutes</u>**                                            **<u>Page(s)</u>**

18 U.S.C. § 1591 ...................................................... 2, 33

18 U.S.C. § 2251A ........................................................ 12

18 U.S.C. § 3231 .......................................................... ix

18 U.S.C. § 3553 ..................................................... *passim*

18 U.S.C. § 3742 .......................................................... ix

28 U.S.C. § 1291 .......................................................... ix

28 U.S.C. § 2241 ................................................................................. 26

28 U.S.C. § 2255 ........................................................................... 25, 26

**Rules**                                                            **Page(s)**

Fed. R. Crim. P. 11 ....................................................................*passim*

Fed. R. Crim. P. 43 ............................................................................ 41

Fed. R. Crim. P. 52 ............................................................................ 15

U.S.S.G. § 2G1.3 .......................................................................... 6, 33

U.S.S.G. § 2G2.1 ......................................................................*passim*

U.S.S.G. § 3A1.1 ........................................................... 8, 9, 35, 37

U.S.S.G. § 3B1.4 ......................................................... 8, 10, 35, 37

U.S.S.G. § 3D1.4 ...................................................................... 10, 37

U.S.S.G. § 3E1.1 ...................................................................... 10, 37

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

The district court had subject-matter jurisdiction under 18 U.S.C. § 3231 because Streeter was charged and indicted (Doc. 1) for violating federal criminal law. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and authority to examine the sentence under 18 U.S.C. § 3742(a) because the district court entered a second amended final judgment on May 26, 2022 (Doc. 86), which Streeter timely appealed on June 1, 2022 (Doc. 88).

## STATEMENT OF THE ISSUES

1.  *Did Streeter knowingly and voluntarily plead guilty?*

    a.  Did the magistrate judge follow the procedure set forth in Federal Rule of Criminal Procedure 11(b)?

    b.  Did Streeter understand the nature of the charges, factual basis, and consequences of his guilty plea?

    c.  Does the record conclusively establish, without the need for further proceedings, that Streeter's trial counsel was ineffective at the plea stage?

2.  *Is Streeter's sentence subject to reversible error?*

    a.  Does the waiver provision of the written plea agreement preclude any challenge to Streeter's sentence?

    b.  Does Streeter's sentence violate the Eighth Amendment?

    c.  Does Streeter's sentence exceed applicable statutory penalties?

    d.  Does Streeter's sentence exceed the applicable guideline range?

    e.  Is Streeter's sentence substantively reasonable?

    f.    Was Streeter's presence required at the bifurcated restitution hearing?

## STATEMENT OF THE CASE

### *Course of proceedings*

By information, a prosecutor charged Streeter with sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and (b)(1) and § 2. Doc. 1 at 1. The complaint also sought forfeiture from Streeter of property used to commit or derived from the offense. *Id.* at 2.

He pleaded guilty to a magistrate judge pursuant to a plea agreement with a sentence-appeal waiver. Doc. 6 at 16. Thereafter, Streeter never sought to withdraw his guilty plea. The district court sentenced Streeter to the statutory maximum of life imprisonment. Doc. 79 at 77. Eventually, the clerk entered a second amended judgment. Doc. 86. Streeter timely appealed (Doc. 88) and is currently incarcerated.

### *Statement of facts*

### A.    Guilty plea

Pursuant to a written plea agreement with a written sentence-appeal waiver (Doc. 6 at 16), Streeter pleaded guilty to count one (Doc. 77 at 54). At the beginning of the plea hearing, the district judge placed

2

Streeter under oath. Doc. 77 at 27. He told him he could be prosecuted separately for perjury or making a false statement. *See id.*

**Competency:** Streeter advised the court he was 63 years old and had a bachelor's degree in marine engineering. *Id.* at 27. Streeter said he wasn't under the influence of any drug, medication, or alcohol, had a clear mind, and had never been treated for mental illness. *Id.* at 28. The court determined Streeter was competent to enter a guilty plea. *See id.* at 29.

**Right to plead to district judge:** The court told Streeter he had the right to plead guilty to the district judge. *Id.* at 29–30. Streeter waived that right knowingly and voluntarily. *Id.*

**Right to indictment:** The court told Streeter he had the right to indictment by a grand jury. *Id.* at 30–31. Streeter waived that right knowingly and voluntarily. *Id.*

**Civil rights:** The court explained Streeter would lose valuable civil rights, such as the rights to vote, hold public office, or possess firearms. *Id.* at 42. The court didn't mention that Streeter would also give up the right to serve on a jury. *Id.* Nevertheless, Streeter agreed. *Id.*

**Elements:** The court explained the essential elements of the offense charged in count one. *Id.* at 49–50. Streeter agreed they were met. *Id.* at 50.

**Penalties:** The court explained count one was punishable by a statutory minimum sentence of 15 years' imprisonment, a statutory maximum sentence of life imprisonment, a fine of up to $250,000, a supervised release term of five years to life, and special assessments of $100 and $5,000. *Id.* at 43. The court didn't mention forfeiture, but told Streeter he'd be ordered to make restitution to any victims. *Id.* Streeter confirmed he understood. *Id.*

**Sentencing guidelines:** The court explained the sentencing guidelines, including the district court's obligation to calculate the applicable guideline range and to consider that range, possible departures or variances under the federal sentencing guidelines, and other sentencing factors under 18 U.S.C. § 3553(a). *See id.* at 44–46.

**Sentence-appeal waiver:** The court explained the plea agreement's sentence-appeal waiver provision. *Id.* at 46–47. Streeter confirmed he understood. *Id.*

**Voluntariness:** The court confirmed nobody had promised or threatened anything in return for Streeter's guilty plea. *See id.* at 41.

**Immigration consequences:** The court confirmed the plea wouldn't have any immigration consequences because Streeter was a U.S. citizen. *Id.* at 38–39.

**Trial rights:** The court informed Streeter that by pleading guilty, he would give up important constitutional rights to present a defense at trial. *Id.* at 47–48. Specifically, it said those rights included: the rights to persist in a plea of not guilty and proceed to a jury or bench trial, to assistance of court-appointed counsel, to present a defense, to call witnesses, and to appeal; the government's burden of proof beyond a reasonable doubt; and the privilege against self-incrimination. *Id.* The court didn't expressly mention the presumption of innocence, the unanimity requirement, the right to hear, confront, and challenge the prosecution's evidence, the absence of a burden to prove his innocence, the right to effective assistance of counsel, or the right to testify in one's own defense. *See id.* Still, Streeter confirmed he understood. *Id.*

**Factual basis:** The court identified the factual basis, stated on pages 18 through 23 of his plea agreement, which Streeter agreed was

true. *Id.* at 51; *see also* Doc. 6 at 18–23 (describing scheme to sexually exploit children in the Phillipines).

**Acceptance of plea:** Streeter pleaded guilty to count one. Doc. 77 at 54. Streeter never moved to withdraw his plea.

### B.    Sentencing

Probation prepared a pre-sentence investigation report ("PSR"), which it subsequently amended. *See* Docs. S22; S29. The amended PSR calculated Streeter's sentencing guideline range using the 2018 edition of the United States Sentencing Guideline Manual ("U.S.S.G."). PSR ¶ 47.

Because Streeter pleaded guilty to the child sex trafficking crime charged in count one as to two victims (D.B. and E.P.), Probation assigned him a base offense level of 32 pursuant to U.S.S.G. § 2G1.3. PSR ¶¶ 51, 61. The calculation of the offense level was similar for the conduct as to each victim:

**D.B. (Victim-1, the victim identified in the information):** Because the offense involved was a minor child who had attained the age of 12 years old but not attained the age of 16 years (*i.e.*, D.B. was 13 years old), the PSR increased his base offense level by two levels pursuant to

U.S.S.G. § 2G2.1(b)(1)(B). PSR ¶ 52. Because the offense involved the commission of a sexual act or sexual contact (*i.e.*, the videos and images of D.B. involved sexual intercourse), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(2)(A). PSR ¶ 53. Because the defendant knowingly engaged in distribution (i.e., by negotiating with Filipino recruiters to produce child pornography, remitting payment, and receiving the transmitted images and videos), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G.2.1(b)(3). PSR ¶ 54. Because the offense involved materials that portrayed sadistic or masochistic conduct or other depictions of violence (*i.e.*, by depicting D.B. crying during intercourse, possibly losing her virginity, and showing blood at D.B.'s vagina, all of which was obviously physically painful, emotionally traumatic, and humiliating), the PSR increased the base offense level by four levels pursuant to U.S.S.G. § 2G2.1(b)(4)(A). PSR ¶ 55. Because the offense involved the use of a computer or an interactive computer service to solicit participation with a minor in sexually explicit conduct (*i.e.*, by communicating with Filipino recruiters via Facebook and negotiating the production and distribution of child pornography), the PSR increased the base offense level by two levels pursuant

to U.S.S.G. § 2G2.1(b)(6)(B). PSR ¶ 56. Because the defendant knew or should have known the victim of the offense was a vulnerable victim (*i.e.*, by specifically seeking child pornographic material and paying a premium for images depicting minors who were losing their virginity while knowing the victims were particularly vulnerable because of poverty, illness, and other relationships to the recruiter), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3A1.1(b)(1). PSR ¶ 57. Because the defendant used, or attempted to use, a person less than eighteen years of age to commit the offense (*i.e.*, by using at least one recruiter who was 16 years old to facilitate the offense), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3B1.4. PSR ¶ 58. That left an adjusted offense level of 48. PSR ¶ 59.

**E.P. (Victim-2, who wasn't mentioned in the information):** The offense level calculation for E.P. was similar (except it didn't involve sadistic or masochistic conduct). Because the offense involved was a minor child who had attained the age of 12 years old but not attained the age of 16 years (*i.e.*, E.P. was 12 years old), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(1)(B). PSR ¶ 62. Because the offense involved the commission of a sexual act or

sexual contact (*i.e.*, the defendant paid for videos of E.P. involving sexual intercourse after he specified which sexual positions he wanted portrayed), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(2)(A). PSR ¶ 63. Because the defendant knowingly engaged in distribution (i.e., by negotiating with Filipino recruiters to produce child pornography, remitting payment, and receiving the transmitted images and videos), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G.2.1(b)(3). PSR ¶ 64. Because the offense involved the use of a computer or an interactive computer service to solicit participation with a minor in sexually explicit conduct (*i.e.*, by communicating with Filipino recruiters via Facebook and negotiating the production and distribution of child pornography), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(6)(B). PSR ¶ 65. Because the defendant knew or should have known the victim of the offense was a vulnerable victim (*i.e.*, by specifically seeking child pornographic material and paying a premium for images depicting minors who were losing their virginity while knowing the victims were particularly vulnerable because of poverty, illness, and other relationships to the recruiter), the PSR increased the base offense level by two levels

pursuant to U.S.S.G. § 3A1.1(b)(1). PSR ¶ 66. Because the defendant used, or attempted to use, a person less than eighteen years of age to commit the offense (*i.e.*, by using at least one recruiter who was 16 years old to facilitate the offense), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3B1.4. PSR ¶ 67. That left an adjusted offense level of 44. PSR ¶ 68.

Because the adjusted offense level of the offense as to D.B. was 48, whereas the adjusted offense level of the offense as to E.P. was 44, the PSR performed a multiple count adjustment and added two offense levels pursuant to U.S.S.G. § 3D1.4. PSR ¶¶ 70–72. That resulted in a combined offense level of 50. PSR ¶ 73. Then, because the defendant was deemed to be a repeat and dangerous sex offender against minors, the PSR added a Chapter Four enhancement of five levels. PSR ¶ 74. Then, the PSR gave a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)–(b). PSR ¶¶ 75–76. Finally, because that total offense level (*i.e.*, 52) was in excess of offense level 43, the offense level was to be treated as level 43. PSR ¶ 77.

Because Streeter no prior criminal history, the PSR scored his criminal history at category I. PSR ¶ 82. Given Streeter's total offense level

of 43 and criminal history category I, the PSR initially calculated a guideline imprisonment range of life imprisonment. PSR ¶ 133.

Three days before sentencing, Streeter filed a 16-page sentencing memorandum with 30 pages of attachments. Docs. 40 (sentencing memorandum); 40.1 (letter); 40.2 (letter); 40.3 (letter); 40.4 (letter); 40.5 (psychologist's report of psychosexual risk assessment). Emphasizing his low likelihood of recidivism, lengthy crime-free life, and ability to contribute to society on his release, he requested a downward departure or downward variance to a mandatory minimum sentence of 15 years' imprisonment. Doc. 40 at 5.

The next day, the government filed its own 23-page sentencing memorandum, which included 126 pages of attached Facebook chats and other records. Doc. 41. The government requested a guidelines sentence of life imprisonment. *Id.* at 1.

The next day, Streeter replied to the government's sentencing memorandum. Doc. 42. He pointed out that the government was speculating without evidence (and sometimes contrary to what Probation expressly found) about purported spoliation of evidence, what 8,000 pages of social

media chats might have contained, and the alleged duration of illicit conduct. *Id.* at 3–5.

At sentencing hearing, neither the Government nor Streeter objected to the PSR's factual accuracy or guidelines calculation. Doc. 79 at 5–6. The court therefore adopted the PSR in its entirety. *Id.* at 6.

At the outset, the government presented two victim statements, which described the harms the offenses had caused them. *Id.* at 7–19. After presenting a detective's testimony, the prosecutor requested a guidelines sentence of life imprisonment and a $100,000 fine. *Id.* at 50. When the district court pressed the prosecutor about what practical benefit Streeter was receiving by pleading guilty despite his high guidelines calculation, the prosecutor responded he gained "the opportunity to throw himself at the mercy of the Court," a "cooperation provision" that "could benefit him down the road," and immunity from charges from the buying and selling of children (which has a 30-year mandatory minimum sentence). *Id.* at 56–57 (citing 18 U.S.C. § 2251A(b)). The prosecutor emphasized a life sentence and $100,000 fine was appropriate because of the offense's severity. *Id.* at 65.

12

Defense counsel pointed out that the prosecutor's tune had changed. *Id.* at 68. Initially, when the plea agreement was signed, the prosecutor said he didn't want a life sentence, but now at sentencing he said that's what he wanted. *Id.* He also emphasized that a life sentence wouldn't give Streeter any benefit for pleading guilty. *Id.* at 68–74.

Streeter allocuted, apologizing for his conduct and admitting his behavior was "disgusting." *Id.* at 75–77.

Ultimately, the district court imposed a sentence of life imprisonment. *Id.* at 77. It deferred ruling on restitution, declined to impose a fine, and imposed a $5,000 special assessment. *Id.* at 81–82. In arriving at this sentence, the court didn't expressly mention whether it had considered the 18 U.S.C. § 3553(a)(1)-(7) factors. Nevertheless, the district court addressed Streeter to explain the reasons for the sentence:

> THE COURT: Okay. Mr. Streeter, it is very hard to sentence somebody to life imprisonment. I most certainly considered a sentence of years, 30 or 40 years, which ultimately does result in a life sentence, but it would have given you more hope than a life sentence does.
>
> The reason I couldn't do that is because I look at how horrible these crimes are. I mean, to do that to children is so— so horrible. It's just so horrible. It's in many ways worse than doing it to children in a developed country. Not that I would want any children to go through it, but somehow these

13

parents are just complicit in it, I guess because of their pov-
erty, their lack of education, their desperation.

And when one of my goals of law, to discourage I look at
that, when I view my goal of—sentencing, *to promote respect
for the law, to discourage other people from doing that*, I felt
so strongly that I had to pay heed to that. As concerned as I
am about discouraging other people from pleading guilty,
which really weighs very heavily on me, ultimately, *concern
for the victims and the horrible nature of this crime* outweigh
that. That's why I sentenced you to life, just thinking about
those victims and thinking about how they have to deal with
that trauma for the rest of their lives. Some people can never
recover from it. Why, because I see them here in court and
they tell me about the abuse that they suffered as a child and
they just can't recover from it. It leads them to a life of being
prostitutes or facing horrible challenges the rest of their life.

So I most certainly gave it a great deal of thought and I
agonized over it, but I think that's the—I think that's the fair
and the right sentence given what's occurred here.

*Id.* at 82–84 (emphases added).

After imposing sentence, the district court didn't inquire whether
either party had any further objection to the sentence; neither party ob-
jected. *See id.* at 84–86. Still, before remanding him to custody, the dis-
trict court then advised Streeter of his rights to appeal and to court-ap-
pointed counsel. *Id.* at 84–85.

Almost two months later, the parties submitted a joint stipulation
regarding restitution (signed by counsel, not by Streeter). Doc. 62. The
stipulation noted that restitution was mandatory and that Streeter had

already agreed, in his plea agreement, to pay restitution to identifiable victims. *Id.* at 1. At any rate, in that stipulation, Streeter agreed to pay both victims $35,000 each. *Id.* at 2. Streeter further agreed to a payment schedule. *Id.* at 3. At the restitution hearing, the district court approved the stipulation. Doc. 105 at 13–15.

### Standard of review

De novo review governs questions of law, such as the validity of a sentence appeal waiver, *United States* v. *Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008), challenges to the knowing and voluntary nature of a defendant's guilty plea, *United States* v. *Frye*, 402 F.3d 1123, 1126 (11th Cir. 2005), and application of the law to sentencing issues, *United States* v. *De La Cruz Suarez*, 601 F.3d 1202, 1220-21 (11th Cir. 2010).

Issues not properly preserved by objection in a district court are reviewed for plain error. Fed. R. Crim. P. 52(b) ("plain error that affects substantial rights may be considered even though it was not brought to the court's attention"); *United States* v. *Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000).

15

Abuse of discretion is the standard for reviewing a district court's

decision to accept a guilty plea, *Frye*, 402 F.3d at 1126, and a sentence's

substantive reasonableness, *Gall* v. *United States*, 552 U.S. 38, 51 (2007).

## SUMMARY OF THE ARGUMENT

1.    Counsel cannot argue in good faith that Streeter did not

knowingly and voluntarily plead guilty. Nevertheless, counsel asks the

Court to independently review the record and, if the Court identifies any

issue of arguable merit, to identify that issue and direct counsel to pre-

pare a supplemental brief.

2.    Counsel cannot argue in good faith that Streeter's sentence is

subject to reversible error. Nevertheless, counsel asks the Court to inde-

pendently review the record and, if the Court identifies any issue of ar-

guable merit, to identify that issue and direct counsel to prepare a sup-

plemental brief.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    The Court should independently review the record to deter-
mine whether Streeter knowingly and voluntarily pleaded
guilty**

Counsel cannot argue in good faith that Streeter did not knowingly

and voluntarily plead guilty. Nevertheless, counsel asks the Court to in-

dependently review the record and, if the Court identifies any issue of

arguable merit, to identify that issue and direct counsel to prepare a supplemental brief. *Cf. Penson* v. *Ohio*, 488 U.S. 75, 83 n.6 (1988) ("a court cannot determine whether counsel is in fact correct in concluding that an appeal is frivolous without itself examining the record for arguable appellate issues"); *Anders* v. *California*, 386 U.S. 738, 744 (1967) ("if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw," but "[t]hat request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal").

Streeter swore he wanted to plead guilty. Upon finding Streeter was knowingly and voluntarily pleading guilty, with an understanding of the nature of the charge, the possible penalties, and the consequences of pleading guilty, the court accepted the plea. Because Streeter didn't move to withdraw his plea, he would have the burden of establishing plain error that affected his substantial rights. *See United States* v. *Vonn*, 535 U.S. 55, 58-59 (2002) ("a silent defendant has the burden to satisfy the plain-error rule" and "a reviewing court may consult the whole record when considering the effect of any error on substantial rights").

To ensure Streeter's guilty plea was entered knowingly and voluntarily, the court needed to confirm in person that Streeter understood the nature of the charges and the consequences of his plea, and that there was a factual basis for the plea. *See, e.g.*, *Boykin* v. *Alabama*, 395 U.S. 238, 242 (1969) ("[i]t was error … for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary"); *McCarthy* v. *United States*, 394 U.S. 459, 465–66 (1969) (Rule 11 requires the trial judge to "personally interrogat[e] the defendant"); *United States* v. *Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("[t]he requirements of Rule 11 are not aspirational but mandatory"). Federal Rule of Criminal Procedure 11(b) sets out the procedure courts must follow before accepting a plea of guilty.

## A. Did the magistrate judge follow the procedure set forth in Federal Rule of Criminal Procedure 11(b)?

The following chart lists the Rule 11(b) requirements and the citation to the place in the record where the district judge addressed those requirements when taking Streeter's guilty plea:

18

| Rule 11(b) | Advice To Defendant | Record Citation |
|---|---|---|
| (1)(A) | The government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath | *See* Doc. 79 at 27 |
| (1)(B) | The right to plead not guilty, or having already so pleaded, to persist in that plea | *See id.* at 47–48 |
| (1)(C) | The right to a jury trial | *Id.* at 47–48 |
| (1)(D) | The right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding | *Id.* at 47–48 |
| (1)(E) | The right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses | *Id.* at 47–48 |
| (1)(F) | The defendant's waiver of these trial rights if the court accepts a plea of guilty or *nolo contendere* | *Id.* at 47–48 |
| (1)(G) | The nature of each charge to which the defendant is pleading | *Id.* at 49–50 |
| (1)(H) | Any maximum possible penalty, including imprisonment, fine, and term of supervised release | *Id.* at 43 |
| (1)(I) | Any mandatory minimum penalty | *Id.* |
| (1)(J) | Any applicable forfeiture | *Id.* |
| (1)(K) | The court's authority to order restitution | *Id.* |
| (1)(L) | The court's obligation to impose a special assessment | *Id.* |

| Rule 11(b) | Advice To Defendant | Record Citation |
|---|---|---|
| (1)(M) | The court's obligation to apply the sentencing guidelines, and the court's discretion to depart from those guidelines under some circumstances | *Id.* at 44–46 |
| (1)(N) | The terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence | *Id.* at 46–47 |
| (1)(O) | That, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future | *Id.* at 38–39 |
| (2) | Before accepting a plea of guilty or *nolo contendere*, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement) | *Id.* at 41 |
| (3) | Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea | *Id.* at 51 |

At the plea colloquy, the court covered every applicable Rule 11 inquiry. Additionally, because Streeter never objected or moved to withdraw his plea, any omission the court may have made would be reviewed only for plain error. *Vonn*, 535 U.S. at 58-59.

Under plain-error review, Streeter would have "the burden of establishing '(1) there is an error; (2) that is plain or obvious; (3) affecting [his] substantial rights in that it was prejudicial and not harmless; and

(4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" *United States* v. *Beckles*, 565 F.3d 832, 842 (11th Cir. 2009) (quoting *United States* v. *Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)). Even if Streeter could establish there was an error that was plain or obvious, he could not show it was prejudicial and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

In this regard, *United States* v. *Monroe*, 353 F.3d 1346 (11th Cir. 2003), is illustrative. On appeal, Monroe claimed the district court committed Rule 11 plain error when it failed to explicitly inform him of his right against compelled self-incrimination. *Id.* at 1348, 1349 n.2 ("Monroe did not move to withdraw his plea in the district court, and thus we review the Rule 11 issue here for plain error"). This Court affirmed because "Monroe failed to carry his burden of establishing that any alleged error affected or prejudiced his substantial rights or that any alleged error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 1352, 1357.

In the plea context, *Monroe* noted that Rule 11 has three "'core objectives'": "(1) ensuring that the guilty plea is free of coercion; (2) ensuring

that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." *Id.* at 1354. "This Court has upheld plea colloquies that fail to address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses these three core concerns." *Id.* (collecting cases). On plain-error review, the only situations in which this Court has reversed Rule 11 plea colloquies involved "a total or almost total failure to address a Rule 11 core concern." *Id.* at 1355.

Applying those principles, *Monroe* identified three reasons why that defendant had suffered no prejudice. *Id.* at 1356. First, even preserved Rule 11 errors are not automatically reversible, but rather reviewed for harmless error. *Id.* Second, failing to advise the defendant of his privilege against self-incrimination caused no prejudice because the Government's "proffer during the plea colloquy did not rely on any confession by Monroe." *Id.* Third, "[a]lthough the district court did not state the precise words that Monroe had 'a right against compelled self-incrimination,' the district court's plea colloquy sufficiently addressed the third core concern—that the defendant must know and understand the

consequences of his guilty plea." *Id.* Accordingly, this Court affirmed. *Id.* at 1357.

Here, any omission of Rule 11's requirements couldn't have prejudiced Streeter's substantial rights. *See United States* v. *Dominguez Benitez*, 542 U.S. 74, 81 (2004) ("the standard phrased as 'error that affects substantial rights,' as used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding"). As such, if he were to raise an appellate challenge to any "Rule 11 failing," he would not be able to "show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 76.

Additionally, the plea colloquy shows that the court followed Rule 11's three core concerns. It specifically interrogated Streeter regarding whether his guilty plea was voluntary (*i.e.*, that nobody had promised or threatened anything in return for his guilty plea), thereby satisfying Rule 11's first core concern. *See Monroe*, 353 F.3d at 1354 (the court must "ensure[e] that the guilty plea is free of coercion"). It also ensured Streeter understood the nature of the charged offense by explaining its essential elements and potential penalties, thereby satisfying Rule 11's second core concern. *See id.* (the court must "ensure[e] that the defendant

23

understands the nature of the charges against him"). Lastly, it confirmed Streeter understood that, by pleading guilty, he would be giving up important constitutional trial and civil rights, thereby satisfying Rule 11's third core concern. *See id.* (the court must "ensur[e] that the defendant is aware of the direct consequences of the guilty plea").

Accordingly, even if the district court had omitted one or more of Rule 11's requirements, Streeter nevertheless would be unable to establish plain error.

### B.    Did Streeter understand the nature of the charges, including the factual basis and consequences of his guilty plea?

The district court addressed the charge, the elements of the offense, the consequences of pleading guilty (including the statutory terms of imprisonment, supervised release, fines, and special assessment), and the factual basis. Streeter repeatedly confirmed he understood. Streeter did not object to the recommendation or move in the district court to withdraw his plea. Thus, in light of this record, counsel cannot argue in good faith that Streeter's unconditional guilty plea was not knowing and voluntary.

## C.    Was Streeter's trial counsel ineffective?

Ineffective assistance of counsel may exist in the plea context when (1) a defendant's trial counsel's representation "'fell below an objective standard of reasonableness,'" and (2) the "'outcome of the plea process would have been different with competent advice.'" *Lafler* v. *Cooper*, 566 U.S. 156, 163 (2012) (citation omitted). The plea agreement (Doc. 6) does not bar an appeal based on trial counsel's ineffectiveness at the plea stage. *See United States* v. *Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (a "'defendant is entitled to appeal'" if the plea "'agreement is involuntary, or otherwise unenforceable'" (citation omitted)). Nevertheless, this Court does not ordinarily address ineffectiveness claims on direct appeal. *Id* at 1284; *see also Massaro* v. *United States*, 538 U.S. 500, 504 (2003) ("in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance").

"It is the general rule in this circuit that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." *Vick* v. *United States*, 730 F.2d 707, 708 (11th Cir. 1984). Rather, the question must first be

"raised in the district court," "facts bearing upon the subject [must be] presented to the trial court," and the "government [must have] an opportunity to present evidence opposing the claims [that an] attorney was ineffective." *United States* v. *Prince*, 456 F.2d 1070, 1070–71 (5th Cir. 1972).[1] Nor can appellate counsel "seek[] to supplement the record by submitting affidavits attached to [the appellant's] brief," because "[a]ffidavits outside the record … may not be considered by this Court." *Moore* v. *United States*, 852, 852–53 (5th Cir. 1966).[2]

On this record, there is no basis to determine conclusively—without the need for further proceedings—that Streeter's trial counsel rendered ineffective assistance of counsel at the plea stage. Accordingly, if Streeter wishes to pursue any ineffectiveness claims, he must do so through a motion to vacate pursuant to 28 U.S.C. § 2255 or a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[3]

---

[1] In *Bonner* v. *City of Prichard*, this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down by close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] *See supra* note 1.

[3] For instance, in addition to his counsel's alleged failure to file an appeal at his behest, Streeter's motion to vacate identified eight further purported irregularities with the proceedings. Doc. 73 at 5–19 (raising eight additional grounds). Regardless whether those grounds may have

## II.   The Court should independently review the record to determine whether Streeter's sentence is subject to reversible error

Counsel cannot argue in good faith that Streeter's sentence is subject to reversible error. Nevertheless, counsel asks the Court to independently review the record and, if the Court identifies any issue of arguable merit, to identify that issue and direct counsel to prepare a supplemental brief. *Cf. Penson*, 488 U.S. at 83 n.6; *Anders*, 386 U.S. at 744.

Streeter was sentenced to the statutory maximum sentence of life imprisonment. Whether that sentence is subject to reversal on appeal involves consideration of the plea agreement, the applicable statutory penalties, the sentencing guidelines, and the factors in 18 U.S.C. § 3553(a).

### A.   Does the written plea agreement's sentence appeal waiver provision preclude any challenge to Streeter's sentence on appeal?

"A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." *United States* v. *Howle*, 166 F.3d 1166,

---

any substantive merit, because the district court dismissed those grounds without prejudice (Doc. 82 at 2, 6), this Court has no jurisdiction to consider their dismissal in this direct appeal. *See United States* v. *Futch*, 518 F.3d 887, 891–94 (11th Cir. 2008); *see also United States* v. *Phillips*, 225 F.3d 1198, 1201 (11th Cir. 2000).

27

1169 (11th Cir. 1999). But to be enforced, an appeal waiver must be made knowingly and voluntarily. *Id.* at 1168. "The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." *Johnson*, 541 F.3d at 1066 (citation omitted). If the appeal waiver is knowingly and voluntarily entered, and if an argument on appeal does not fall within any of the exceptions to the appeal waiver, then the argument is "barred by the appeal waiver." *United States* v. *Segarra*, 582 F.3d 1269, 1273 (11th Cir. 2009).

When Streeter signed the plea agreement and pled guilty, he waived the right to appeal his sentence, except for limited circumstances. *See* Doc. 6 at 16. The magistrate judge discussed the plea agreement's sentence-appeal waiver at the plea colloquy. Streeter confirmed he understood that provision.

Nonetheless, Streeter could argue the failure to specify a guideline range in the plea agreement may invalidate the appeal waiver and allow this Court to review issues on appeal. The Second Circuit has recognized that an appeal waiver provision might not be enforced when the plea

agreement fails to indicate the specific guideline range the defendant is facing. *See United States* v. *Rosa*, 123 F.3d 94, 99-101 (2d Cir. 1997). It holds that a knowing and voluntary waiver of the right to appeal a sentence imposed within a range specified in the plea agreement is generally enforceable. *See, e.g.*, *United States* v. *Chen*, 127 F.3d 286, 289 (2d Cir. 1997). And it allows these types of waivers (where the plea agreement specifies a sentence or range of sentence) because "[t]he defendant assumes the risk of error or abuse without appellate review only to the extent of the maximum sentence outlined in the plea agreement." *Rosa,* 123 F.3d at 99. When a plea agreement does not specify a sentence or sentencing range, the "defendant assumes a virtually unbounded risk of error or abuse by the sentencing court." *Id.*

Accordingly, the Second Circuit holds that, when a plea agreement does not specify a sentence or sentencing range, the court will not summarily deny the appeal despite a waiver of appeal provision. *Id.* at 100. Rather, the court will carefully examine the facts to determine whether it warrants review. *Id.* at 101; *cf. Howle,* 166 F.3d at 1169 (Propst, J., concurring) ("[a]s a trial judge, I have a problem with obtaining a

knowing and understanding waiver of appeal with respect to any potential error I might make at sentencing").

In an unpublished decision, however, this Court rejected a similar argument regarding a sentence appeal waiver provision. *See United States* v. *Aponte*, 461 Fed. App'x 828, 831 (11th Cir. 2012).[4]

The Second Circuit has also held that "'a guilty plea can be challenged for contractual invalidity … based on a lack of consideration.'" *United States* v. *Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018) (citation omitted). In *Lutchman*, the written plea agreement required the defendant to waive indictment, plead guilty to a terrorism conspiracy, and "waive the right to appeal any sentence lesser than or equal to the 240-month maximum." *Id.* at 37. *Lutchman* invalidated the waiver, reasoning, "The government would achieve 'a conviction without the expense and effort of proving the charges at trial' … and save the time and expense of an appeal," whereas the defendant would "receive[] no benefit from his plea beyond what he would have gotten by pleading guilty without an agreement." *Id.*

---

[4] Unpublished Eleventh Circuit opinions are "not binding precedent," *Bravo* v. *United States*, 532 F.3d 1154, 1164 n.5 (11th Cir. 2008), but "may be cited as persuasive authority," 11th Cir. R. 36-2.

Unlike *Lutchman*, however, the plea agreement in this case was supported by consideration. In *Lutchman*, the government had expressly stated in the plea agreement that it would recommend the statutory maximum sentence. *Id.* at 38. Here, in contrast, the government agreed to pursue no further charges, to recommend a two- or three-level downward departure for acceptance of responsibility, to recommend a guidelines sentence, and to consider filing a substantial assistance motion. Doc. 6 at 4–6. Thus, unlike *Lutchman*, the plea agreement here was supported by valid consideration. In other words, Streeter certainly gained value in exchange for his guilty plea. *See* Doc. 79 at 56–57.

Appeal waivers may also be invalid when a sentence is based on a constitutionally impermissible factor, such as sex, race, religion, or other arbitrary classification. *See United States* v. *Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993). Here, however, there is no indication in the record on appeal that the District Court sentenced Streeter based on any such constitutionally impermissible factor.

## B. Does Streeter's sentence violate the Eighth Amendment?

The sentence didn't violate the Eighth Amendment.

31

In the context of non-capital sentencing, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin* v. *Michigan*, 501 U.S. 957, 1001 (1991) (mandatory sentence of life imprisonment without possibility of parole was not constitutionally disproportionate for the crime of possession of 672 grams of cocaine, even for a first offender).

A prison "sentence within the statutory limits generally does not violate the Eighth Amendment." *United States* v. *Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (defendant did not meet the threshold showing of disproportionality because he was sentenced within the statutory limits). In fact, this Court has "never found a term of imprisonment to violate the Eighth Amendment, and outside the special category of juvenile offenders the Supreme Court has only found one to do so." *United States* v. *Lecuyer*, 545 Fed. App'x 874, 875 (11th Cir. 2013); *see also Solem* v. *Helm*, 463 U.S. 277, 280-82, 303 (1983) (finding a sentence of life imprisonment without parole violated the Eighth Amendment for a petty, non-violent criminal who wrote a bad check for $100), *overruled by Harmelin*, 501 U.S. at 965; *Lockyer* v. *Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for

only the extraordinary case."). Counsel cannot argue in good faith that Streeter's statutory maximum life sentence is one of those "'exceedingly rare'" situations, in which the specified term of imprisonment violates the Eighth Amendment. *United States* v. *Farley,* 607 F.3d 1294, 1319 (11th Cir. 2010) (citation omitted).

### C.    Does Streeter's sentence exceed the applicable statutory penalties?

The statutory maximum sentence of life imprisonment didn't exceed the applicable statutory penalties.

Streeter was convicted of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and (b)(1) and § 2. The statutory maximum penalty for that crime is life imprisonment. *Id.* § 1591(b)(1). When Streeter pleaded guilty, he was informed of and confirmed his understanding of that penalty. The sentence therefore didn't exceed the applicable statutory penalties.

### D.    Did the court miscalculate the guidelines range?

The court appears to have correctly calculated the guideline range as life imprisonment. *See* Doc. 79 at 6; U.S.S.G. § 5A.

Because Streeter pleaded guilty to the child sex trafficking crime charged in count one as to two victims (D.B. and E.P.), Probation assigned

him a base offense level of 32 pursuant to U.S.S.G. § 2G1.3. PSR ¶¶ 51, 61. The calculation of the offense level was similar for the conduct as to each victim.

**D.B. (Victim-1, the victim identified in the information):** Because the offense involved was a minor child who had attained the age of 12 years old but not attained the age of 16 years (*i.e.*, D.B. was 13 years old), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(1)(B). PSR ¶ 52. Because the offense involved the commission of a sexual act or sexual contact (*i.e.*, the videos and images of D.B. involved sexual intercourse), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(2)(A). PSR ¶ 53. Because the defendant knowingly engaged in distribution (i.e., by negotiating with Filipino recruiters to produce child pornography, remitting payment, and receiving the transmitted images and videos), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G.2.1(b)(3). PSR ¶ 54. Because the offense involved materials that portrayed sadistic or masochistic conduct or other depictions of violence (*i.e.*, by depicting D.B. crying during intercourse, possibly losing her virginity, and showing blood at D.B.'s vagina, all of which was obviously physically

painful, emotionally traumatic, and humiliating), the PSR increased the base offense level by four levels pursuant to U.S.S.G. § 2G2.1(b)(4)(A). PSR ¶ 55. Because the offense involved the use of a computer or an interactive computer service to solicit participation with a minor in sexually explicit conduct (*i.e.*, by communicating with Filipino recruiters via Facebook and negotiating the production and distribution of child pornography), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(6)(B). PSR ¶ 56. Because the defendant knew or should have known the victim of the offense was a vulnerable victim (*i.e.*, by specifically seeking child pornographic material and paying a premium for images depicting minors who were losing their virginity while knowing the victims were particularly vulnerable because of poverty, illness, and other relationships to the recruiter), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3A1.1(b)(1). PSR ¶ 57. Because the defendant used, or attempted to use, a person less than eighteen years of age to commit the offense (*i.e.*, by using at least one recruiter who was 16 years old to facilitate the offense), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3B1.4. PSR ¶ 58. That left an adjusted offense level of 48. PSR ¶ 59.

**E.P. (Victim-2, who wasn't mentioned in the information):**
The offense level calculation for E.P. was similar (except it didn't involve sadistic or masochistic conduct). Because the offense involved was a minor child who had attained the age of 12 years old but not attained the age of 16 years (*i.e.*, E.P. was 12 years old), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(1)(B). PSR ¶ 62. Because the offense involved the commission of a sexual act or sexual contact (*i.e.*, the defendant paid for videos of E.P. involving sexual intercourse after he specified which sexual positions he wanted portrayed), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(2)(A). PSR ¶ 63. Because the defendant knowingly engaged in distribution (i.e., by negotiating with Filipino recruiters to produce child pornography, remitting payment, and receiving the transmitted images and videos), the PSR increased his base offense level by two levels pursuant to U.S.S.G. § 2G.2.1(b)(3). PSR ¶ 64. Because the offense involved the use of a computer or an interactive computer service to solicit participation with a minor in sexually explicit conduct (*i.e.*, by communicating with Filipino recruiters via Facebook and negotiating the production and distribution of child pornography), the PSR increased the

base offense level by two levels pursuant to U.S.S.G. § 2G2.1(b)(6)(B). PSR ¶ 65. Because the defendant knew or should have known the victim of the offense was a vulnerable victim (*i.e.*, by specifically seeking child pornographic material and paying a premium for images depicting minors who were losing their virginity while knowing the victims were particularly vulnerable because of poverty, illness, and other relationships to the recruiter), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3A1.1(b)(1). PSR ¶ 66. Because the defendant used, or attempted to use, a person less than eighteen years of age to commit the offense (*i.e.*, by using at least one recruiter who was 16 years old to facilitate the offense), the PSR increased the base offense level by two levels pursuant to U.S.S.G. § 3B1.4. PSR ¶ 67. That left an adjusted offense level of 44. PSR ¶ 68.

Because the adjusted offense level of the offense as to D.B. was 48, whereas the adjusted offense level of the offense as to E.P. was 44, the PSR performed a multiple count adjustment and added two offense levels pursuant to U.S.S.G. § 3D1.4. PSR ¶¶ 70–72. That resulted in a combined offense level of 50. PSR ¶ 73. Then, because the defendant was deemed to be a repeat and dangerous sex offender against minors, the

PSR added a Chapter Four enhancement of five levels. PSR ¶ 74. Then, the PSR gave a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)–(b). PSR ¶¶ 75–76. Finally, because that total offense level (*i.e.*, 52) was in excess of offense level 43, the offense level was to be treated as level 43. PSR ¶ 77.

Because Streeter no prior criminal history, the PSR scored his criminal history at category I. PSR ¶ 82. Given Streeter's total offense level of 43 and criminal history category I, the PSR initially calculated a guideline imprisonment range of life imprisonment. PSR ¶ 133.

Without objection, the court adopted that guidelines calculation. The court therefore didn't miscalculate the range.

### E.    Is Streeter's sentence substantively reasonable?

The sentence appears to be substantively reasonable.

"[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." *United States* v. *Talley*, 431 F.3d 784, 788 (11th Cir. 2005). While a district court is not required to specifically address each of the factors found in § 3553(a), it must "set forth enough to satisfy the appellate court that [it] has considered the parties'

arguments and has a reasoned basis for exercising [its] own legal decision making authority." *Rita* v. *United States*, 551 U.S. 338, 356 (2007); *Talley*, 431 F.3d at 786 ("an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient"). Additionally,

> "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court"; we will not remand for resentencing unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553 factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."

*United States* v. *Garza-Mendez*, 735 F.3d 1284, 1290 (11th Cir. 2013) (quoting *United States* v. *Clay*, 483 F.3d 739, 743 (11th Cir. 2007)) (citation and punctuation omitted).

Since *United States* v. *Booker*, 543 U.S. 220 (2005), this Court has on several occasions vacated sentences that were substantively unreasonable. *See, e.g.*, *United States* v. *Irey*, 612 F.3d 1160, 1190-91 (11th Cir. 2010) (*en banc*) (collecting cases and holding 17-1/2-year sentence for sexual crimes was substantively unreasonable). Most of those cases involved sentences that were too lenient. *See United States* v. *McQueen*, 727 F.3d 1144, 1160–61 (11th Cir. 2013) (12 months and 1 month for conspiracy

against civil rights and obstruction of justice); *United States* v. *Kuhlman*, 711 F.3d 1321, 1330 (11th Cir. 2013) (time served for $3 million fraud); *United States* v. *Livesay*, 587 F.3d 1274, 1278–79 (11th Cir. 2009) (probation for billion-dollar fraud scheme); *United States* v. *Pugh*, 515 F.3d 1179, 1188–94 (11th Cir. 2008) (probation for child pornography); *United States* v. *Martin*, 455 F.3d 1227, 1238–39 (11th Cir. 2006) (7-day sentence for billion-dollar securities fraud); *United States* v. *Crisp*, 454 F.3d 1285, 1290 (11th Cir. 2006) (5 hours' imprisonment for bank fraud). Others involved sentences that were too severe. *See United States* v. *Plate*, 839 F.3d 950, 952 (11th Cir. 2016) (27 months for embezzlement by a bank officer or employee); *United States* v. *Killen*, 729 Fed. App'x 703, 717–18 (11th Cir. 2018) (139 years for possessing, producing, and distributing child pornography).

Here, the District Court offered Streeter and his counsel the opportunity to present mitigating information concerning the sentence to be imposed. Then, it considered the 18 U.S.C. § 3553(a) factors and the advisory guideline range in sentencing Streeter to the statutory maximum sentence of life imprisonment. Therefore, unlike the cases in which this Circuit vacated sentences that were too severe or too lenient, Streeter's

sentence isn't unreasonable (even if a more lenient sentence also might've been not unreasonable).

### F. Was Streeter's presence required at the bifurcated restitution hearing?

It seems Streeter wasn't present at the bifurcated restitution hearing. But that makes no difference here.

Ordinarily, defendants must be present at sentencing. *See* Fed. R. Crim. P. 43(a)(3). But the restitution award here wasn't governed by Rule 43(a)(3); instead, it was governed by 18 U.S.C. 3664(d)(5). *See United States* v. *Stivers*, 996 F.3d 800, 801–02 (7th Cir. 2021). That statute supersedes the requirements of Rule 43(a)(3) for this type of crime. *See id.*; *accord United States* v. *Wyatt*, 9 F.4th 440, 450 (7th Cir. 2021); *United States* v. *Robl*, 8 F.4th 515, 528 (7th Cir. 2021).

## <u>CONCLUSION</u>

Counsel cannot argue in good faith any nonfrivolous challenge to Streeter's plea or sentence. Nevertheless, the Court should independently review the record and, if any issue of arguable merit exists, identify that issue and direct counsel to prepare a supplemental brief.

Respectfully submitted,

/s/ Thomas Burns
Thomas A. Burns
BURNS, P.A.
301 West Platt Street, Suite 137
Tampa, FL 33606
(813) 642-6350
tburns@burnslawpa.com

*Court-appointed counsel for*
*Christopher John Streeter*

## **CERTIFICATE OF COMPLIANCE**

1.    This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)'s type-volume requirement. As determined by Microsoft Word 2010's word-count function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 11th Circuit Rule 32-4, this brief contains 8,359 words.

2.    This brief further complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and with Federal Rule of Appellate Procedure 32(a)(6)'s type-style requirements. Its text has been prepared in a proportionally spaced serif typeface in roman style using Microsoft Word 2010's 14-point Century Schoolbook font.

December 12, 2022                    /s/ Thomas Burns
                                                  Thomas A. Burns

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the original and four copies of the foregoing brief with the Clerk of Court via CM/ECF and regular mail on this 12th day of December, 2022, to:

> David J. Smith, Clerk of Court
> U.S. COURT OF APPEALS FOR THE
>     ELEVENTH CIRCUIT
> 56 Forsyth Street N.W.
> Atlanta, GA 30303

I FURTHER CERTIFY that I served a true and correct copy of the foregoing brief via CM/ECF on this 12th day of December, 2022, to:

> AUSA Linda Julin McNamara

I FURTHER CERTIFY that I served a true and correct copy of the foregoing brief via regular mail and email on this 12th day of December, 2022, to:

> Christopher John Streeter (12618-509)
> FCI Coleman Medium
> P.O. Box 1032
> Coleman, FL 33521
> leonilyn.streeter@gmail.com

I FURTHER CERTIFY that, as required by 11th Cir. R. 27-1(a)(8), I informed the party represented that he or she has 30 days to file a response to the motion to withdraw.

December 12, 2022                    /s/ Thomas Burns
                                     Thomas A. Burns

44